SKC

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joseph McGhee, | No. CV-23-08601-PCT-SRB (ESW) |
| Plaintiff, | |
| v. | **ORDER** |
| State of Arizona, et al., | |
| Defendants. | |

Plaintiff Joseph McGhee, who is not in custody, filed a pro se First Amended Complaint for Damages and Equitable Relief in the Arizona Superior Court, County of Coconino on June 11, 2023 (Doc. 1-4 at 90−128), and on November 16, 2023, Defendants timely removed the action to this Court and paid the filing fee.  (Doc. 1.)  The Court found that, because Plaintiff alleged violations of his federal Constitutional rights, the allegations in the First Amended Complaint facially supported federal subject matter jurisdiction and assumed jurisdiction over the action.  (Doc. 11.)

Before the Court are eleven Motions: Defendants' Motion to Strike Plaintiff's Legal Memorandum attached to Plaintiff's Amended Complaint (Doc. 14), Plaintiff's Motion to Vacate [state court] Dismissal Order (Doc. 19), Defendants' Motion to Dismiss (Doc. 20), Plaintiff's Motion to Stay (Doc. 22), Plaintiff's Motion to Strike Response [to Plaintiff's Motion to Vacate Dismissal Order] by Certain Non-State Defendants (Doc. 28), Plaintiff's "[Verified] Application for Temporary Restraining Order Without Notice and Order to Show Cause [Re: Preliminary Injunction]" (Doc. 57 (brackets in original)), Plaintiff's

1   Motion for Leave to File Rico Statement (Doc. 72), Plaintiff's Motion for Leave to File

2   Second Amended and Supplemental Complaint (Doc. 75); Defendant Rabin's Motion for

3   Relief from the Court's Rule 36 Scheduling Order (Doc. 79), Plaintiff's Motion for Judicial

4   Notice (Doc. 87), and Plaintiff's First Motion for Extension of Time to File

5   Response/Reply to [Defendants'] Response to Motion for Leave to File

6   Amended/Supplemental Complaint (Doc. 88).

7           The Court will grant in part Defendants' Motion to Dismiss, sever and remand the

8   claims as to which it abstains or lacks subject matter jurisdiction, dismiss the remaining

9   claims and this action, and deny the remaining Motions as moot.

10  **I.    Background**

11          On or about April 7, 2023, Plaintiff filed a 3-count Verified Complaint for

12  Declaratory and Injunctive Relief in the Coconino County Superior Court, Case No:

13  CV2023-00190.  (Doc. 1-4 at 68−86.)  Prior to removal, on June 11, 2023, Plaintiff filed

14  the now-operative 12-count First Amended Complaint for Damages and Equitable Relief

15  ("FAC").  (*Id.* at 90−128.)  Plaintiff's claims all arise from his arrest and state court

16  criminal prosecution on charges of stalking and custodial interference under Arizona law.

17          Plaintiff relevantly alleged that, during a months-long legal dispute between

18  Plaintiff and his ex-wife, Dara Rabin, over custody of their minor son S.M., Rabin told

19  police on August 6, 2020 that Plaintiff placed a GPS tracking device inside S.M.'s favorite

20  stuffed toy, and Rabin later reported in January 2021 that Plaintiff placed a second GPS

21  tracking device on Rabin's car, which Rabin discovered when it fell off in the snow.  (*Id.*

22  ¶¶ 10−35.)  When she was later interviewed by Defendant Flagstaff Police Department

23  (FPD) Officer Ryan Forsman, Rabin falsely reported that Plaintiff had been known to walk

24  around her property, had commented to their son that he was buying firearms, and had

25  threatened Rabin and her current boyfriend, from which Forsman concluded Plaintiff met

26  the elements for stalking under Arizona Revised Statutes § 13-2923(A)(2).  (*Id.* ¶ 35.)[1]

27  _____

28          [1] Under Arizona Revised Statutes § 13-2923(A)(2), "[a] person commits stalking if
    the person intentionally or knowingly engages in a course of conduct that is directed toward

1   Forsman included these false statements in his affidavit in support of a search warrant he
2   submitted to the Coconino County Superior Court.  (*Id.* ¶¶ 35, 41−42.)

3   On June 8, 2021, Defendant Forsman and FPD Officer Chaiken arrested Plaintiff
4   for stalking, and Plaintiff was booked into the Coconino County Jail.  (*Id.* ¶¶ 43−45.)  In
5   his probable cause statement, Forsman requested a high bond based on the alleged danger
6   Plaintiff posed to Rabin.  (*Id.* ¶ 46.)  At Plaintiff's initial appearance, the Flagstaff Justice
7   Court imposed a $50,000 bond, and in subsequent criminal court hearings, the Coconino
8   County Superior Court upheld this amount, despite the State presenting no evidence
9   Plaintiff was a flight risk.  (*Id.* ¶¶ 49−65.)  Plaintiff remained in custody for 98 days until
10  September 13, 2021, when an out-of-state friend travelled to Flagstaff and posted bail.  (*Id.*
11  ¶ 66.)  On March 31, 2022, Plaintiff pleaded guilty to custodial interference under Arizona
12  Revised Statutes § 13-1302(A)(3) and attempted stalking under § 13-2923.  (*Id.* ¶ 67.)  The
13  attempted stalking charge was "for the August 2020 GPS incident," which Plaintiff claims,
14  "was not and could not constitute a crime under the stalking statute."  (*Id.*)

15  Plaintiff named as Defendants Rabin, Forsman, Coconino County Attorney William
16  Ring, Coconino County Chief Deputy County Attorney Ammon Barker, Coconino County
17  ("the County"), and the State of Arizona ("the State").  (*Id.* ¶¶ 2−7.)

18  In Counts I−V, Plaintiff seeks declaratory judgments invalidating the Arizona
19  statutes the State employed in Plaintiff's criminal prosecution and bail hearings.  (*Id.* at
20  106−116.)  Prior to removal, the state court granted the State's Motion to Dismiss and
21  dismissed these claims with prejudice.  (*See* Doc. 1-6 at 35.)

22  In Count VI, Plaintiff seeks declaratory judgments that Defendant Barker's actions
23  in Plaintiff's bail hearing show the Coconino County Attorney's Office has an official
24  policy or unofficial custom of seeking to hold defendants in pretrial detention for reasons
25  unrelated to flight risk.  In Count VII, Plaintiff seeks declaratory judgment that Arizona's
26  Parents' Bill of Rights in Arizona Revised Statutes § 1-602(E) gives him a cause of action

27
28  another person and if that conduct causes the victim to . . . [r]easonably fear death or the
    death of" the victim's family member or a person with whom the victim is romantically
    involved.  Ariz. Rev. Stat. § 13-2923(A)(2).

against unidentified Defendants for interfering with his parental rights and supersedes any immunities Defendants may claim under § 1280.01 (absolute immunity)[2] and § 12-820.02 (qualified immunity).  (Doc. 1-6, FAC, at 116−19.)  In Count VIII, Plaintiff brings a § 1983 claim against Defendant Forsman based on Forsman's alleged falsifications in obtaining a search warrant and his arrest and detention of Plaintiff without probable cause, in violation of Plaintiff's Fourth Amendment rights.  (*Id.* at 119−21.)  In Count IX, Plaintiff brings a § 1985 claim against Defendants Forsman and Rabin based on their alleged conspiracy to falsely arrest, charge, and detain Plaintiff based on knowingly false statements.  (*Id.* at 121−22.)  In Count X, Plaintiff brings a § 1983 claim against Defendant Forsman based on malicious prosecution.  (*Id.* at 122−23.)  In Count XI, Plaintiff brings a municipal liability claim against the County under § 1983 for its alleged policy or custom of seeking excessive bail.  (*Id.* at 123−26.)  And, in Count XII, Plaintiff brings a § 1983 claim against Defendant Forsman based on Forsman's alleged violation of Plaintiff's fundamental rights as a parent under Arizona's Parents' Bill of Rights and the United States Constitution for allegedly arresting Plaintiff without probable cause to sway the outcome of Plaintiff's pending child custody proceeding in favor of Rabin.  (*Id.* at 126−127.)  Plaintiff seeks declaratory and injunctive relief and damages.  (*Id.* at 127.)

On December 9, 2022, approximately four months before he initiated this action, Plaintiff filed an Amended Petition for Post-Conviction Relief (PCR) in the Coconino County Superior Court, seeking to overturn his criminal convictions.  (Doc. 1-3 at 2−103.)  As relief, Plaintiff sought (a) recission of the plea agreement, (b) an order vacating his attempted stalking conviction, (c) an order vacating his custodial interference conviction, (d) a finding of factual innocence as to his attempted stalking conviction, (e) a finding of factual innocence as to custodial interference conviction, (f) a conclusion of law that probation officers are "the state" for purposes of any rights, duties, or obligations set forth in the plea agreements, to the same extent as county or state prosecutors, (g) a conclusion

---

[2] Plaintiff typed § 12-802.01, not 12-820.01, but it is clear from context that this was a typographical error because § 12−802.01 does not have to do with immunities.

of law that Arizona Revised Statutes § 12-2923 is void for vagueness, (h) a conclusion of law that Arizona Revised Statutes § 12-2923 is unconstitutionally vague, (i) a conclusion of law that any plea agreement requiring waiver of a parental right under Arizona's Parents' Bill of Rights violates public policy, in unconscionable, and is per se void, (j) a conclusion of law that any parent granted unsupervised parenting time by a family court order has a right to know the precise physical whereabouts of his child at any time, and (k) any other relief the court finds fit to award Petitioner.  (*Id.* at 102−103.)

## II.   Motion to Dismiss Legal Standards

### A.   Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) allows a defendant to raise the defense that the court lacks jurisdiction over the subject matter of an entire action or of specific claims alleged in the action.  When considering a motion to dismiss for lack of subject matter jurisdiction, the Court takes as true the material facts alleged in the complaint.  *See Whisnant v. United States*, 400 F.3d 1177, 1179 (9th Cir. 2005).  But the Court is not restricted to the face of the pleadings; it may consider affidavits to resolve any factual disputes concerning the existence of jurisdiction.  *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (citation omitted); *see Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1379 (9th Cir. 1983) (consideration of material outside the pleadings did not convert a Rule 12(b)(1) motion into one for summary judgment).  If a defendant files a Rule 12(b)(1) motion attacking the existence of subject-matter jurisdiction, the plaintiff bears the burden of proving that jurisdiction exists.  *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

### B.   Federal Rule of Civil Procedure 12(b)(6)

Dismissal of a complaint, or any claim within it, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990)).  In determining

whether a complaint states a claim under this standard, the allegations in the complaint are taken as true and the pleadings are construed in the light most favorable to the nonmovant. *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007).  A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  But "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what . . . the claim is and the grounds upon which it rests."  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation omitted).  To survive a motion to dismiss, a complaint must state a claim that is "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Where the plaintiff is a pro se prisoner, the court must "construe the pleadings liberally and [] afford the petitioner the benefit of any doubt."  *Hebbe v. Pliler,* 627 F.3d 338, 342 (9th Cir. 2010).

As a general rule, when deciding a Rule 12(b)(6) motion, the court looks only to the face of the complaint and documents attached thereto.  *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  If a court considers evidence outside the pleading, it must convert the Rule 12(b)(6) motion into a Rule 56 motion for summary judgment.  *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).  A court may, however, consider documents incorporated by reference in the complaint or matters of judicial notice without converting the motion to dismiss into a motion for summary judgment.  *Id.*

**III.    Defendants' Motion to Dismiss**

Defendants argue that Plaintiff's claims must be dismissed on several grounds, including that Counts I−V have already been dismissed; *Younger* abstention precludes the Court from addressing Plaintiff's claims in Counts I and II because the declaratory relief Plaintiff seeks would interfere with Plaintiff's criminal proceedings, which are ongoing

while plaintiff seeks post-conviction relief in the state court; these claims are also barred under *Rooker-Feldman* because federal courts cannot review final state court judgments; Plaintiff lacks standing to pursue his claims for declaratory and prospective relief for alleged past violations because he has not shown they are likely to recur; Plaintiff's § 1983 claims for his allegedly wrongful arrest, detention, and convictions are precluded under *Heck v. Humphrey*; Plaintiff fails to state a policy-based claim against the County; and Defendant Forsman is entitled to qualified immunity on the constitutional claims against him.  (Doc. 20.)

### A.      The State Court's Dismissal Order (Counts I−V)

As noted, prior to removal, the Coconino County Superior Court dismissed Plaintiff's claims for declaratory judgment in Counts I−V.  "The federal court takes the case as it finds it on removal and treats everything that occurred in the state court as if it had taken place in federal court." *Butner v. Neustadter*, 324 F.2d 783, 785 (9th Cir. 1963). The Court therefore treats the state court's dismissal of Plaintiff's claims in Counts I−V "as though it had been validly rendered in the federal proceeding," and considers these claims dismissed unless that order is set aside.  *Id.*

After removal, Plaintiff filed a Motion to Vacate Dismissal Order (Doc. 22), seeking to reinstate the claims the state court dismissed.  (Doc. 29.)  Because the Court "adopt[s] as its own the state court's decision to dismiss" these claims, it follows that it may construe Plaintiff's Motion to Vacate as a motion for reconsideration of the state court's dismissal order as if that order were its own.  *See Caswell v. Olympic Pipeline Co.*, 484 F. App'x 151, 153 (9th Cir. 2012) ("After removal the district court correctly adopted as its own the state court's decision to dismiss Tesoro Refining and Olympic Pipeline on the grounds that Oregon's statute of repose barred the Caswells' claims against them").[3]

---

[3] In their Response to Plaintiff's Motion to Vacate, Defendants argue, in part, that the Court should summarily deny the Motion as untimely.  (Doc 29 at 4.)  The Court will not do so here because Defendants removed this action 16 days after the state court issued the underlying dismissal order, and Defendants do not cite any Arizona rules of civil procedure showing Plaintiff needed to file his Motion to Vacate within 16 days of that

1    Here, though, the state court did not articulate its reasons for dismissal but simply

2    granted Defendants' Motion to Dismiss based on its review of the party's briefs.  (*See*

3    Doc. 1-6 at 35.)  Therefore, even if the Court were to treat Plaintiff's Motion to Vacate as

4    a motion for reconsideration of the state Court's dismissal order, it could not reconsider

5    that order without effectively relitigating Defendants' previous Motion to Dismiss, which

6    was not and is not before this Court.  Due to these complications, the Court will, instead,

7    turn to Defendants' remaining arguments for dismissing these claims.

8          **B.**    ***Younger* Abstention (Counts I and II)**

9                **1.    Legal Standard**

10    The abstention doctrine in *Younger v. Harris*, 401 U.S. 37 (1971), prevents a federal

11    court in most circumstances from directly interceding in ongoing state criminal or quasi-

12    criminal proceedings.    *Younger* applies to requests for equitable relief, including

13    declaratory relief, because "ordinarily a declaratory judgment will result in precisely the

14    same interference with and disruption of state proceedings that the longstanding policy

15    limiting injunctions was designed to avoid."  *Samuels v. Mackell*, 401 U.S. 66, 72 (1971).

16    The *Younger* abstention doctrine applies while a case works its way through the state

17    appellate process, if a prisoner is convicted.  *New Orleans Pub. Serv., Inc. v. Council of*

18    *City of New Orleans*, 491 U.S. 350, 368−69 (1989) ("When, in a proceeding to which

19    *Younger* applies, a state trial court has entered judgment, the losing party cannot, of course,

20    pursue equitable remedies in federal district court while concurrently challenging the trial

21    court's judgment on appeal"); *Canales-Robles v. Peters*, 270 F. Supp. 3d 1230, 1241 (D.

22    Or. 2017) ("To the extent Canales–Robles seeks intervention in his ongoing PCR case,

23    *Younger* requires declining jurisdiction over Canales-Robles's claims for injunctive

24    relief").

25    _____

26    order.  Moreover, although litigants in the District of Arizona must file a motion for
reconsideration "no later than fourteen (14) days after the date of the filing of the Order
27    that is the subject of the motion," LRCiv 7.2(g)(2), this Court accepted jurisdiction over
this action on December 13, 2023, and Plaintiff filed his Motion to Vacate seven days later,
28    on December 20, 2023.  (Docs. 11, 19.)  Under the unusual circumstances presented by
removal, the Court is not persuaded that Plaintiff's Motion to Vacate was untimely.

*Younger* abstention is an "extraordinary and narrow exception" to the "general rule" that federal courts should not decline jurisdiction. *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 727 (9th Cir. 2017). "'[O]nly exceptional circumstances justify a federal court's refusal to decide a case in deference to the States.'" (*Id.* (quoting *New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 368 (1989)). "*Younger* abstention is appropriate when: (1) there is an ongoing state judicial proceeding; (2) the proceeding implicates important state interests; (3) there is an adequate opportunity in the state proceedings to raise constitutional challenges; and (4) the requested relief seeks to enjoin or has the practical effect of enjoining the ongoing state judicial proceeding." *Page v. King*, 932 F.3d 898, 901– 02 (9th Cir. 2019). "*Younger* abstention requires that the federal courts abstain when state court proceedings were ongoing at the time the federal action was filed." *Beltran v. State of Cal.*, 871 F.2d 777, 782 (9th Cir. 1988)

An exception to *Younger* abstention exists "where the danger of irreparable loss is both great and immediate," such that "'a substantial loss of or impairment of [a state court criminal defendant' s constitutional rights] will occur if [the criminal defendant] must await the state court's disposition and ultimate review in this Court of any adverse determination'" *Younger*, 401 U.S. at 46, 49 (quoting *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965)); s*ee Arevalo v. Hennessy*, 882 F.3d 763, 766 (9th Cir. 2018) (finding that "[d]eprivation of physical liberty by detention constitutes irreparable harm," and the irreparable harm exception applies when "'full vindication of the [constitutional] right necessarily requires intervention before trial'") (quoting *Mannes v. Gillespie*, 967 F.2d 1310, 1312 (9th Cir. 1992)). Where a plaintiff asserts an exception to abstention, the plaintiff bears the burden of establishing that the exception applies. *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002).

### 2.    Discussion

In Counts I and II, Plaintiff seeks declaratory judgments invalidating the state law criminal statutes underlying his guilty pleas. In Count I, Plaintiff seeks declaratory judgment that Arizona's criminal stalking statute (Ariz. Rev. Stat. § 13-2923) is

1   unconstitutionally vague and overbroad.  (Doc. 1-4 at 106−107).  In Count II, he seeks

2   declaratory judgment interpreting Arizona's custodial interference statute (Ariz. Rev. Stat.

3   § 13-1302) to mean that the requirements of § 13-1302(D) are to be "liberally construed,"

4   and, once they are met, "a parent may not be prosecuted under § 13-1302(A)(2)−(3)."

5          Defendants argue that *Younger* abstention bars this Court from considering these

6   claims.  (Doc. 20 at 7−8.)  As to the first two *Younger* requirements, they argue that

7   (1) Plaintiff's state criminal proceedings are ongoing via Plaintiff's PCR proceedings, and

8   (2) Plaintiff's claims implicate an important state interest of "adjudicating criminal statutes

9   preventing stalking and ensuring the cessation of interference with judicially-mandated

10  child custody."  (*Id.* at 8.)  They also argue that (3) Plaintiff has an adequate opportunity

11  to present his claims for relief in his PCR proceedings, and (4) Plaintiff seeks declaratory

12  relief "in an effort to nullify his criminal convictions and judgment."  (*Id.* at 7−8.)

13         Plaintiff does not dispute that the first element—the existence of an ongoing state

14  action—is met, but he argues that *Younger* does not bar his claims for declaratory judgment

15  because (1) no important state interests are implicated, (2) he lacks an adequate opportunity

16  to raise federal questions in his PCR proceedings, and (3) *Younger* does not apply to PCR

17  proceedings.  (Doc. 40 at 4−16.)  Plaintiff also argues that *Younger* cannot apply here

18  because his prosecution was conducted in "bad faith," which he argues is an "extraordinary

19  circumstance" that makes abstention inappropriate.  (*Id.* at 16−23.)

20         Plaintiff's argument that no important state interests are implicated by his attempt

21  to invalidate Arizona criminal statutes fails because states clearly have an important

22  interest in enforcing and upholding their own laws.  *Younger* recognized that "[o]rdinarily,

23  there should be no interference with [state] officers" instituting criminal actions when,

24  "primarily, they are charged with the duty of prosecuting offenders against the laws of the

25  state, and [they] must decide when and how this is to be done."  401 U.S. at 45; *See also*

26  *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S. Ct.

27  2515, 2521, 73 L. Ed. 2d 116 (1982) ("Proceedings necessary for the vindication of

28  important state policies or for the functioning of the state judicial system . . . evidence the

1   state's substantial interest in the litigation); *Hansel v. Town Ct. for Town of Springfield,*
2   *N.Y.*, 56 F.3d 391, 393 (2d Cir. 1995) ("it is axiomatic that a state's interest in the
3   administration of criminal justice within its borders is an important one").

4       Plaintiff's argument to the contrary rests on his contention that his guilty plea to
5   attempted stalking is void, so the state can have no valid interest in that conviction. (*Id.* at
6   4−6.) Plaintiff cites to two cases in which the Arizona Supreme Court invalidated criminal
7   defendants' guilty pleas to "escape" because it found the defendants were not in custody at
8   the time of their purported escapes, so their actions were not a crime, and he cites to
9   additional United States Supreme Court cases that have invalidated guilty pleas due to
10  jurisdictional defects. (*Id.* at 4−8.) None of these cases addressed *Younger* or found that
11  states lack important interests in enforcing their own criminal statutes. At most, these cases
12  support that, under limited circumstances, courts may invalidate criminal convictions that
13  were based on guilty pleas. But this showing does not help Plaintiff because no court has
14  invalidated Plaintiff's guilty pleas or convictions. Plaintiff merely presents his own
15  theories for why Arizona's stalking statute did not apply to his conduct, from which he
16  argues his conviction is void. But whatever the potential merits of this argument, the State
17  has an important interest in resolving this question in the first instance. *See Younger*, 401
18  U.S. at 45 ("The accused should first set up and rely upon his defense in the state courts,
19  even though this involves a challenge of the validity of some statute, unless it plainly
20  appears that this course would not afford adequate protection") (internal quotation marks
21  and citations omitted).

22      Plaintiff's argument that he does not have an adequate opportunity to raise federal
23  questions in his PCR proceedings is also unpersuasive. Plaintiff states that he filed a 102-
24  page Petition, but the State then filed a motion to strike the petition, and the state court
25  granted the motion, giving Plaintiff 21 days to refile a petition compliant with applicable
26  page limits. (Doc. 40 at 8−9.) Plaintiff states he timely filed an amended 28-page petition,
27  but he argues he did not raise his constitutional challenges therein "due to futility." (*Id.*
28  at 9.) This statement is too vague and conclusory to show Plaintiff lacked an adequate

opportunity to raise his federal claims in his amended PCR petition.  Moreover, even
inferring that Plaintiff abandoned certain arguments in his amended petition to comply with
applicable page limits, standard page limits and other filing requirements apply in courts
of law generally and are not enough to show that Plaintiff was foreclosed from presenting
his federal claims.

Plaintiff makes similar arguments based on the state court's denial of his request to
amend his PCR petition to assert newly discovered grounds for relief, and he identifies
several procedural differences between state PCR proceedings and direct appeals that he
claims limit his ability to seek relief.  (Doc. 40 at 13−16.)  As with his complaints about
page limits, though, Plaintiff's discontent over the state court's adverse rulings and various
procedural requirements merely demonstrates the kinds of challenges he would face in any
court and fails to show that he lacks an adequate opportunity to pursue his federal claims
in his state court PCR proceedings.  "We cannot assume that state judges will interpret
ambiguities in state procedural law to bar presentation of federal claims."  *Pennzoil Co. v.
Texaco, Inc.*, 481 U.S. 1, 15 (1987).  "It would trivialize the principles of comity and
federalism if federal courts failed to take into account that an adequate state forum for all
relevant issues has clearly been demonstrated to be available prior to any proceedings on
the merits in federal court."  *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457
U.S. 423, 437 (1982)

Plaintiff's argument that *Younger* does not apply to actions seeking post-conviction
relief is also without merit.  Plaintiff relies on *James v. Arizona Dep't of Corr.*, No.
 CV18-04545-PHX-JJT-JFM, 2019 WL 7494660, at *3 (D. Ariz. Aug. 14, 2019), *report
and recommendation adopted,* No. CV18-04545-PHX-JJT-JFM, 2020 WL 85111 (D. Ariz.
Jan. 7, 2020), in which the district court found that *Younger* abstention was "not necessary
where the pending state proceeding is not a direct appeal, but a state post-conviction
proceeding."  In reaching this conclusion, *James* indirectly relied on the "rule [of *Sherwood
v. Tomkins*, 716 F.2d 632 (9th Cir. 1983)]," which it claimed "appl[ied] *Younger*"
abstention and stood for the proposition that *Younger* only applies "to pending direct

appeals, and not to pending state post-conviction proceedings." *James*, 2019 WL 7494660, at \*3.[4]  *Sherwood*, though, did not apply *Younger* abstention or address whether *Younger* applied to PCR proceedings.  *Sherwood* confirmed only that a state prisoner must directly appeal his conviction and sentence in state court before bringing a federal habeas petition. 716 F.2d at 634.  Neither *Sherwood* nor the other cases *James* relied on as clarifying or applying "the rule of *Sherwood*" speak to the question at issue here, which is whether *Younger* abstention applies to Plaintiff's claims for declaratory relief in this action based on his alleged wrongful arrest, prosecution, and criminal convictions while his state PCR proceedings are pending.

The Ninth Circuit has interpreted *Younger* to mean that "only in the most unusual circumstances is a defendant entitled to have federal interposition by way of injunction or habeas corpus until after . . . judgment has been appealed from and the case concluded in the state courts." *Drury v. Cox*, 457 F.2d 764, 764–65 (9th Cir. 1972).  In Arizona, a defendant who pleads guilty does not have a right to a direct appeal but "may seek relief under Rule 33 by filing a Notice Requesting Post-Conviction Relief and a Petition for Post-Conviction Relief in the trial court."  Ariz. R. Crim. P. 17.1(e).  In such cases, a PCR petition "is the functional equivalent of a direct appeal."  *State v. Ward*, 118 P.3d 1122, 1126 (Ariz. Ct. App. 2005); *Al Saud v. Ryan*, No. CV15-00849-PHX-SPL-JFM, 2015 WL 10097522, at \*3 (D. Ariz. Nov. 3, 2015), *report and recommendation adopted sub nom. Saud v. Ryan*, No. CV15-00849-PHX-SPL, 2016 WL 614022 (D. Ariz. Feb. 16, 2016)

---

[4] The reasoning in *James* was indirect because *James* relied on a footnote in *Smith v. Williams*, No. 2:-cv-00952-MMD-VCF, 2013 WL 1501583, at \*2, n.2 (D. Nevada April 11, 2013), that stated that the Ninth Circuit in *Henderson v. Johnson*, 710 F3d 872 (9th Cir. 2013), clarified that "the rule [of] *Sherwood* applies to pending direct appeals, and not to pending state post-conviction proceedings."  Although *James* stated that *Sherwood* or "the rule of *Sherwood*" applied *Younger* abstention, it did not.  *Sherwood*, *Henderson*, and *Smith* all addressed the question of when a state court convicted prisoner has properly exhausted his claims for purposes of bringing a habeas petition.  These cases are not applicable here because whether and when a habeas petitioner has properly exhausted his claims in state court for purposes of habeas relief, while it relates to federal court jurisdiction, is a separate issue from whether *Younger* abstention applies.

1    ("The Arizona courts have determined that a timely, first PCR proceeding of a pleading

2    defendant (an "of right" petition) is the equivalent of direct appeal").   Under these

3    circumstances, if a PCR petition is pending, "*Younger* abstention is required."   *Id.*

4    (applying *Younger* to habeas action where the defendant pleaded guilty in state court, and

5    his PCR proceeding was ongoing).   Under the facts of this case, where Plaintiff pleaded

6    guilty in state court—thereby waiving his right to direct appeal—and is currently

7    challenging his conviction in PCR proceedings, *Younger* abstention applies.

8         Lastly, Plaintiff posits that "extraordinary circumstances" make abstention

9    inappropriate.   He argues both that the "bad faith exception" to *Younger* abstention applies

10   and *Younger* abstention is inappropriate because he faces irreparable injury while his rights

11   are restricted under his terms of probation.  (Doc. 40 at 16−23.)

12        The Ninth Circuit has recognized that "even if *Younger* abstention is appropriate,

13   federal courts do not invoke it if there is a 'showing of bad faith, harassment, or some other

14   extraordinary circumstance that would make abstention inappropriate.'"  *Arevalo v.*

15   *Hennessy*, 882 F.3d 763, 765−66 (9th Cir. 2018) (quoting *Middlesex,* 457 U.S. at 435).

16   "[B]ad faith 'generally means that a prosecution has been brought without a reasonable

17   expectation of obtaining a valid conviction.'"  *Baffert v. California Horse Racing Bd.*, 332

18   F.3d 613, 621 (9th Cir. 2003) (quoting *Kugler v. Helfant,* 421 U.S. 117, 126 n. 6 (1975));

19   *see also Gibson v. Berryhill,* 411 U.S. 564, 578–79 (1973) (federal suit to enjoin a state

20   licensing hearing met the "bad faith" exception to *Younger* where the licensing board was

21   "so biased by prejudgment and pecuniary interest that it could not constitutionally conduct

22   [the] hearing[]").

23        Plaintiff fails to show that the "bad faith" exception applies here.   As an initial

24   matter, Plaintiff's bad faith arguments are difficult to follow, consisting of a single, several-

25   page paragraph of rhetorical questions asking whether certain prosecutorial actions, which

26   Plaintiff implies happened in his criminal prosecution, show bad faith.  (Doc. 40 at 18−21.)

27   After posing these questions, Plaintiff claims in conclusory fashion that "the entirety of

28   Plaintiff's criminal case prior to his guilty plea was a clinic in bad faith presented by the

Coconino County law enforcement." (*Id.* at 21.)  Plaintiff acknowledges, though, that all the alleged bad-faith conduct took place before he entered his guilty pleas, and he makes no claim or showing that the state court is currently operating in bad faith in conducting his PCR proceedings or is fatally biased or corrupt, such that it cannot "constitutionally conduct" those proceedings.  *Gibson,* 411 U.S. at 578–79.  Plaintiff's "bad faith" allegations also appear to be directed only at the prosecutors in his criminal case, not the court, and it is unclear how these allegations of bad faith conduct during Plaintiff's criminal prosecution, which has already concluded, justify an exception to *Younger* while Plaintiff seeks relief in his PCR proceedings.  *See Partington v. Gedan*, 961 F.2d 852, 862 (9th Cir. 1992), *as amended* (July 2, 1992) ("Partington has alleged no interference with his federal rights in connection with the Rule 2 proceedings that cannot be addressed in the course of the state proceedings").

Plaintiff also argues that the Court should find an exception to *Younger* based on "irreparable injury," because, while he is on probation, he is being deprived of his constitutional rights.  (Doc. 40 at 22.)  This includes not being able to possess firearms, not being able to leave the state without permission of his probation officer, and not being permitted to enter or travel past his son's school because Defendant Rabin, his alleged "victim," works there.  (*Id.* at 22–23.)  Plaintiff similarly argues in his Motion for a temporary restraining order or preliminary injunction that, so long as these restrictions remain, he is suffering irreparable harm.  (*See* Doc. 57 at 5–8.)

As noted, an exception to *Younger* abstention exists "where the danger of irreparable loss is both great and immediate."  *Younger*, 401 U.S. at 46.  This exception typically applies when a criminal defendant is deprived of physical liberty without a bail hearing while awaiting trial.  *Arevalo*, 882 F.3d at 767 (finding that, in such cases, "the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'") (internal citations omitted).  The Court is not persuaded that this exception applies here because Plaintiff is not awaiting trial; instead, he already pleaded guilty to and was lawfully sentenced to probation on the charges he now seeks to invalidate.  Plaintiff has also not shown in

practical terms that any harms he faces from these restrictions are both great and immediate. Plaintiff merely argues in conclusory fashion that any restriction on his constitutionally protected rights equates to irreparable harm. (Doc. 40 at 40 at 22; Doc. 57 at 5.) However, it has long been established that a state's finding that an individual committed a crime "justifies imposing extensive restrictions on the individual's liberty." *Morrissey v. Brewer*, 408 U.S. 471, 483 (1972). Unless Plaintiff's convictions are overturned, the mere fact that he faces some infringement of his constitutional rights while on probation for his criminal convictions does not amount to irreparable harm. Even though Plaintiff alleges his guilty pleas and convictions should be overturned because the underlying criminal statutes were misapplied or are unconstitutionally vague or overbroad, he has also not shown any exceptional circumstances that would prevent him from making these arguments in his PCR proceedings that would justify this Court's intervention while those proceedings are pending. *See Pennzoil*, 481 U.S. at 15 ("a federal court should assume that state procedures will afford an adequate remedy [to present federal claims], in the absence of unambiguous authority to the contrary.")

Because Plaintiff's PCR proceedings were ongoing when Plaintiff initiated this action, and the remaining *Younger* factors apply, the Court must dismiss Plaintiff's claims for declaratory relief in Counts I and II. "When a case falls within the proscription of *Younger,* a district court must dismiss the federal action." *Fresh Int'l Corp. v. Agric. Lab. Rels. Bd.*, 805 F.2d 1353, 1356 (9th Cir. 1986); *Credit One Bank, N.A. v. Hestrin*, 60 F.4th 1220, 1232 (9th Cir. 2023) (affirming dismissal of federal action upon finding that "the district court correctly abstained after concluding that all four of the *Younger* abstention requirements were met.").

### C.    Standing (Counts III−VII)

#### 1.    Legal Standard

To sue in federal court, a plaintiff must have standing under Article III of the United States Constitution. *Lewis v. Cont'l Bank Corp.,* 494 U.S. 472, 477 (1990). "It is well established that 'the irreducible constitutional minimum of standing contains three

elements':

> (1) a concrete and particularized injury that is 'actual or imminent, not conjectural or hypothetical';
>
> (2) a causal connection between the injury and the defendant's challenged conduct; and
>
> (3) a likelihood that a favorable decision will redress that injury.

*Pyramid Lake Paiute Tribe of Indians v. Nevada, Dep't of Wildlife*, 724 F.3d 1181, 1187 (9th Cir. 2013) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61 (1992)). The party invoking federal jurisdiction bears the burden of establishing constitutional standing. *Lujan*, 504 U.S. at 561.

For standing to challenge a statute, a plaintiff must be able to show "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Arizona Right to Life Pol. Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003) (internal quotation marks and citation omitted). When seeking prospective injunctive relief, the plaintiff must show both that he has suffered a cognizable harm and "a sufficient likelihood that he will again be wronged in a similar way." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (quoting *Lujan*, 504 U.S. at 560; *City of Los Angeles v. Lyons,* 461 U.S. 95, 111 (1983).

### 2.    Discussion

In Counts III−V, Plaintiff seeks declaratory judgments that Arizona's statutory bail system is unconstitutional under the Eighth and Fourteenth Amendments and the Arizona Constitution. Similarly, in Count VI, Plaintiff seeks declaratory judgment that the County has a policy and practice of knowingly and deliberately seeking to hold criminal defendants in detention by imposing bail for reasons other than flight risk, and he seeks injunctive relief that would "permanent[ly] enjoin Defendants Ring and Barker, and their subordinates, from seeking bail against a defendant for any purpose other than . . . flight risk." (FAC ¶ 128.) In Count VII, Plaintiff seeks a declaration that Arizona's Parents' Bill of Rights, Ariz. Rev. Stat. § 1-602(E), which creates a cause of action against state entities

1   and officials who violate those rights, "constitutes a legislative waiver of the immunities

2   set forth under A.R.S. §§ 12-8[20].01and 12-820.02." (FAC at 117−119.)

3          Plaintiff does not allege he is currently suffering or is likely to suffer future injury

4   due to Arizona's bail statute or Defendants' application thereof. Absent any such

5   allegations, Plaintiff has not met his burden of showing he has article III standing to bring

6   his claims in Counts III−VI. *See O'hea v. Littleton*, 414 U.S. 488, 495 (1974) (while "past

7   wrongs are evidence bearing on whether there is a real and immediate threat of repeated

8   injury . . . . [w]e assume that [plaintiffs] will conduct their activities within the law and so

9   avoid [future] prosecution and conviction as well as exposure to the challenged course of

10  conduct").

11         Plaintiff also lacks standing to assert a claim for declaratory relief regarding

12  Arizona's Parents' Bill of Rights in Count VII. Plaintiff has not brought any state law

13  causes of action under Arizona's Parents' Bill of Rights or argued that he intends to do so,

14  and Defendants have not asserted any statutory immunities to any such potential claims.

15  Plaintiff does not have standing to seek declaratory relief regarding injuries that are merely

16  conjectural or hypothetical. *Pyramid Lake*, 724 F.3d at 1187.

17         Because Plaintiff lacks standing to bring his claims in Counts III−VII, the Court

18  lacks subject matter jurisdiction over these claims and must either dismiss them or remand

19  them to state court. "Where a plaintiff in a removed action lacks federal standing to sue,

20  the action should generally be remanded, not dismissed." *Page v. Tri-City Healthcare*

21  *Dist.*, 860 F. Supp. 2d 1154, 1171 (S.D. Cal. 2012); *see* 28 U.S.C. § 1447(c) ("If at any

22  time before final judgment it appears that the district court lacks subject matter jurisdiction,

23  the case shall be remanded"). The Court will sever and remand these claims to the

24  Coconino County Superior Court based on lack of federal subject matter jurisdiction.

25  "Remand is the correct remedy because a failure of federal subject-matter jurisdiction

26  means only that the *federal* courts have no power to adjudicate the matter. State courts are

27  not bound by the constraints of Article III." *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193,

28  1196 (9th Cir. 2016) (emphasis in original).

1      Even though the state court already dismissed Plaintiff's claims in Counts III−V,

2  the Court will include these dismissed claims and the dismissed claims in Counts I−II in

3  its remand to allow the state court to consider whether Plaintiff has any ground to seek

4  reconsideration of that court's dismissal order.[5]

5          **D.**    *Heck* **Bar (Counts VIII, IX, X, XII)**

6              **1.**    **Legal Standard**

7      A person convicted of a crime under state law may not bring a claim under 42 U.S.C.

8  § 1983 if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his

9  conviction or sentence," unless he demonstrates that the conviction or sentence has

10 previously been reversed, expunged, or otherwise invalidated. *Heck v. Humphrey*, 512

11 U.S. 477, 486−87 (1994); *see Wilkinson v. Dotson*, 544 U.S. 74, 81−82 (2005) ("[A] state

12 prisoner's § 1983 action is barred (absent prior invalidation)–no matter the relief sought

13 (damages or equitable relief), no matter the target of the prisoner's suit (state conduct

14 leading to conviction or internal prison proceedings)–*if* success in that action would

15 necessarily demonstrate the invalidity of confinement or its duration").

16             **2.**    **Discussion**

17     In Count VIII Plaintiff asserts a § 1983 claim for damages against Defendant

18 Forsman based on Forsman's alleged arrest and detention of Plaintiff without probable

19 cause and use of false statements to obtain a search warrant.  In Count IX, Plaintiff asserts

20 a § 1985 conspiracy claim against Defendants Forsman and Rabin based on these

21 Defendants' alleged conspiracy to violate Plaintiff's Fourth and Fourteenth Amendment

22 rights by using false statements to arrest, charge, and detain Plaintiff.[6]  In Count X, Plaintiff

23 _____

24      [5] *Younger*, which bars this Court's consideration of Plaintiff's claims in Counts I

25 and II, unlike lack of standing, is an abstention doctrine based on comity, not a bar to the

26 Court's Article III jurisdiction, but because *Younger* is also specific to federal courts, not
to state courts, remand of Counts I and II serves the same purpose as remand for lack of

27 federal subject matter jurisdiction.

28      [6] *Heck* applied to § 1983 claims, but the Ninth Circuit has also applied its holding
to claims brought under § 1985. *See McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1097

asserts a § 1983 claim for damages against Defendant Forsman based on malicious prosecution for initiating a criminal action against Plaintiff.  And in Count XII, Plaintiff brings a § 1983 claim for damages against Defendant Forsman for allegedly violating Plaintiff's fundamental rights as a parent under Arizona's Parents' Bill of Rights and the United States Constitution by arresting Plaintiff without probable cause to manipulate the outcome of Plaintiff's then-pending child custody proceedings.

These claims are all premised on Plaintiff's allegations that Defendants Forsman and Rabin knew Rabin's statements that Plaintiff placed a GPS device on her vehicle and she feared for her safety were false and did not establish probable cause for Plaintiff's arrest, detention, or prosecution for stalking.  A finding that Forsman did not have probable cause to arrest, charge, and detain Plaintiff would necessarily call into question the validity of Plaintiff's subsequent criminal conviction for attempted stalking, which has not yet been reversed, expunged, or otherwise invalidated.  *See Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996) ("There is no question that *Heck* bars [plaintiff's] claims that defendants lacked probable cause to arrest him and brought unfounded charges against him.")

Plaintiff argues that *Heck* does not apply here because his "entire judgment of conviction is void."  (Doc. 40 at 27.)  This argument, though, is based solely on Plaintiff's own belief that he was wrongfully convicted, not on any determination by a court of law. Absent a showing that a court with authority to review his criminal convictions has reversed, expunged, or otherwise invalidated Plaintiff's conviction for attempted stalking, Plaintiff's § 1983 and § 1985 claims against Defendants Forsman and Rabin in Counts VIII-X, and XII have not yet accrued and are barred under *Heck*.  "Just as a cause of action for malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor . . . , so also a § 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has

---

(9th Cir. 2004) (applying *Heck* bar to claims brought under §§ 1983, 1985 and 1986); *see Roberts v. City of Fairbanks*, No. 4:17-CV-0034-HRH, 2018 WL 5259453, at *6 (D. Alaska Oct. 22, 2018), *rev'd and remanded on other grounds,* 947 F.3d 1191 (9th Cir. 2020) (applying *Heck* to claims brought under § 1983 and §1985).

1    been invalidated." *Heck*, 512 U.S. at 489–90.

2            Plaintiff further argues that *Heck* does not apply to these claims because his § 1983

3    claims against Defendants Forsman and Rabin do not pertain to his conviction for

4    attempted stalking but only to "the charge that was dismissed," which Plaintiff argues "was

5    not investigated by Forsman." (*Id.*)  By "the charge that was dismissed," Plaintiff appears

6    to mean the stalking charge that was subsequently reduced to attempted stalking pursuant

7    to Plaintiff's plea agreement.  This argument is unpersuasive because "a voluntary plea of

8    guilty—even to a lesser charge, as in the instant case—establishes probable cause, thereby

9    precluding a subsequent claim of false arrest and false imprisonment." *Chillemi v. Town*

10   *of Southampton*, 943 F. Supp. 2d 365, 376 (E.D.N.Y. 2013).  Even if this were not so, a

11   finding that there was no probable cause to arrest, detain, or prosecute Plaintiff for stalking

12   would "necessarily imply" or "demonstrate the invalidity" of Plaintiff's conviction for

13   attempted stalking because that charge was based on the same statute and the same material

14   facts that Plaintiff alleges Defendants Forsman and Rabin knowingly fabricated.  *See*

15   *Cunningham v. Gates*, 312 F.3d 1148, 1153 (9th Cir. 2002), *as amended on denial of reh'g*

16   (Jan. 14, 2003) (quoting *Heck*, 512 U.S. at 487) ("Cunningham cannot pursue claims under

17   § 1983 if they are based on theories that "necessarily imply the invalidity of his

18   conviction[s] or sentence[s]").  Plaintiff must first obtain a favorable termination of his

19   attempted stalking conviction before he may bring his § 1983 and § 1985 claims against

20   Forsman and Rabin in Counts VIII−X, and XII.  Because Plaintiff has not shown this

21   conviction was terminated in his favor, and his PCR Petition is still pending, these claims

22   have not yet accrued, and the Court will dismiss Counts VIII−X, and XII pursuant to *Heck*.

23           **E.     Failure to State a Claim (Count XI)**

24                   **1.     *Monell* Legal Standard**

25           A local governmental unit may not be held responsible for the acts of its employees

26   under a *respondeat superior* theory of liability.  *See Bd. of County Comm'rs v. Brown*, 520

27   U.S. 397, 403 (1997); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Fogel v.*

28   *Collins*, 531 F.3d 824, 834 (9th Cir. 2008).  Therefore, to hold a county liable, a plaintiff

must go beyond the *respondeat superior* theory of liability and demonstrate that the alleged constitutional deprivation was the product of a policy or custom of the local governmental unit, because municipal liability must rest on the actions of the municipality, and not the actions of the employees of the municipality.  *See Brown*, 520 U.S. at 403; *Monell*, 436 U.S. at 690–91; *Fogel*, 531 F.3d at 834. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

## 2.     Discussion

In Count XI, Plaintiff asserts a § 1983 *Monell* liability claim against the County based on its alleged policy of knowingly and deliberately seeking to hold criminal defendants in pre-trial detention by imposing bail for reasons other than flight risk.  (FAC ¶ 128.)  Defendants argue that Plaintiff fails to state a claim for two independent reasons.  First, they argue that Plaintiff's *Monell* claim is based on Defendant Barker's alleged violation of Plaintiff's constitutional rights when seeking bail, and they posit that, even though Barker worked for the County Attorney's Office, under Arizona law, county prosecutors act as officers of the State, not the County, when conducting criminal prosecutions.  (Doc. 20 at 16−17.)  Defendants also argue that a municipality may only be held liable for constitutional violations under *Monell* if those violations resulted from a policy, and Plaintiff has not made any non-conclusory allegations to show that the County has any policies, customs, or practices of seeking excessive bail or that any such policies were the moving force behind his alleged constitutional violation.  (*Id.* at 17−18.)

In his Response, Plaintiff concedes that he fails to state a *Monell* claim against the County based on the reasons Defendants put forth in their Motion to Dismiss, and he voluntarily dismisses this claim.  (Doc. 40 at 1, n.1.)  The Court will dismiss Plaintiff's *Monell* claim against the County in Count XI for failure to state a claim and based on Plaintiff's voluntary dismissal of that claim.

## IV.     Remaining Motions

1    Because the Court must abstain from or dismiss all of Plaintiff's claims in this
2    action, it will deny as moot Defendants' Motion to Strike (Doc. 14), Plaintiff's Motion to
3    Vacate (Doc. 19), Plaintiff's Motion to Stay (Doc. 22), Plaintiff's Motion to Strike
4    Response (Doc. 28), Plaintiff's  Motion for Temporary Restraining Order or Preliminary
5    Injunction (Doc. 57), Plaintiff's Motion for Leave to File Rico Statement (Doc. 72),
6    Plaintiff's Motion for Leave to File Second Amended and Supplemental Complaint
7    (Doc. 75), Defendant Rabin's Motion for Relief from the Court's Rule 36 Scheduling
8    Order (Doc. 79), Plaintiff's Motion for Judicial Notice (Doc. 87), and Plaintiff's First
9    Motion for Extension of Time to File Response/Reply to [Defendants'] Response to
10   Motion for Leave to File Amended/Supplemental Complaint (Doc. 88).

11   **IT IS ORDERED:**

12   (1)    The reference to the Magistrate Judge is withdrawn as to Defendants' Motion
13   to Strike Plaintiff's Legal Memorandum attached to Plaintiff's Amended Complaint
14   (Doc. 14), Plaintiff's Motion to Vacate [state court] Dismissal Order (Doc. 19),
15   Defendants' Motion to Dismiss (Doc. 20), Plaintiff's Motion to Stay (Doc. 22), Plaintiff's
16   Motion to Strike Response [to Plaintiff's Motion to Vacate Dismissal Order] by Certain
17   Non-State Defendants (Doc. 28), Plaintiff's "[Verified] Application for Temporary
18   Restraining Order Without Notice and Order to Show Cause [Re: Preliminary Injunction]"
19   (Doc. 57), Plaintiff's Motion for Leave to File Rico Statement (Doc. 72), Plaintiff's Motion
20   for Leave to File Second Amended and Supplemental Complaint (Doc. 75), Defendant
21   Rabin's Motion for Relief from the Court's Rule 36 Scheduling Order (Doc. 79), Plaintiff's
22   Motion for Judicial Notice (Doc. 87), and Plaintiff's First Motion for Extension of Time to
23   File Response/Reply to [Defendants'] Response to Motion for Leave to File
24   Amended/Supplemental Complaint (Doc. 88).

25   (2)    Defendants' Motion to Dismiss (Doc. 20) is **granted in part** as follows:

26   (a)    Counts VIII−XII are **dismissed**;

1        (a)     Counts I–VII are **severed** and **remanded** to the Coconino County

2              Superior Court, Case No: CV2023-00190, pursuant to 28 U.S.C. §

3              1441(c)(2).

4        (3)    Defendants' Motion to Strike (Doc. 14), Plaintiff's Motion to Vacate

5 (Doc. 19), Plaintiff's Motion to Stay (Doc. 22), Plaintiff's Motion to Strike (Doc. 28),

6 Plaintiff's "[Verified] Application for Temporary Restraining Order Without Notice and

7 Order to Show Cause [Re: Preliminary Injunction]" (Doc. 57), Plaintiff's Motion for Leave

8 to File Rico Statement (Doc. 72), Plaintiff's Motion for Leave to File Second Amended

9 and Supplemental Complaint (Doc. 75), Defendant Rabin's Motion for Relief from the

10 Court's Rule 36 Scheduling Order (Doc. 79), Plaintiff's Motion for Judicial Notice

11 (Doc. 87), and Plaintiff's Motion for Extension of Time (Doc. 88) are **denied** as moot.

12        (4)    This action is **dismissed**; the Clerk of Court must enter judgment accordingly

13 and **terminate** the action.

14        (5)    The Clerk of Court must mail a **certified copy** of this Order to:

15                    Valerie Wyant

16          Clerk of the Arizona Superior Court, Coconino County

17                200 N. San Francisco

18               Flagstaff, Arizona 86001

19

20 Dated this 16th day of April, 2024.

21

22

23

24                         Susan R. Bolton

25                  United States District Judge

26

27

28